THE NETHERLANDS FIRE INSURANCE COMPANY, Respondent *v.*
JOSEPH RAMSAY BARRY and Others, as Copartners, Doing Busi-
ness under the Firm Name and Style of J. RAMSAY BARRY &
Co., Appellants.

*Issue as to whether a letter, directing the cancellation of an insurance policy, was
received by an agent — testimony of an employee of the agent, that the letter did not
come to his hands — charge indicating too clearly the judge's convictions in the
case.*

Upon the trial of an action in which the issue involved was whether the defend-
ants, who were the local agents of the plaintiff insurance company, had
received a letter directing them to cancel a certain fire insurance policy, which
letter was alleged to have been mailed to the defendants by the plaintiff's gen-
eral agents, it is improper for the court to refuse to allow the defendants to
show, by one of their employees, who, although he did not have charge of the
defendants' correspondence, would in the due course of business have received
the letter in question if it had been delivered to the defendants and who had
a duty to perform in respect to letters of that character, that such employee
never received or saw the letter.

What charge to a jury is erroneous on the ground that the trial judge conveyed
too plainly to the jury his own convictions upon the evidence, considered.

APPEAL by the defendants, Joseph Ramsay Barry and others, as
copartners, doing business under the firm name and style of J. Ram-
say Barry & Co., from a judgment of the Supreme Court in favor of
the plaintiff, entered in the office of the clerk of the county of New
York on the 12th day of July, 1904, upon the verdict of a jury, and
also from an order entered in said clerk's office on the 19th day of
July, 1904, denying the defendants' motion for a new trial made
upon the minutes.

*H. Snowden Marshall*, for the appellants.

*John Notman*, for the respondent.

LAUGHLIN, J.:

The defendants were agents for the plaintiff in Baltimore. The
action is to recover damages for their failure to cancel a policy of
insurance pursuant to instructions alleged to have been mailed to
them on the 15th day of September, 1900, by Weed & Kennedy of
New York, who were the managers for the plaintiff in the United

States.   The defendants in their answer denied that they received the letter directing them to cancel the policy.   Whether it was mailed or received was the principal issue litigated upon the trial.

It appears that the defendants on the 7th day of September, 1900, as agents of the plaintiff, duly issued policy No. 112,326 to the Carroll Manufacturing Company of Baltimore, insuring certain buildings and property against fire for the period of one year commencing August 24, 1900.   This is the policy which it is claimed they should have canceled.   It was not canceled, and the property was destroyed by fire early in the morning of the 6th of October, 1900.   The amount which the plaintiff was obliged to pay under the policy on account of this loss, together with interest thereon, constitutes the damages sought to be recovered.   The defendants, as agents of the plaintiff, had issued another policy, No. 112,325, to the Carroll Manufacturing Company upon other property belonging to it, insuring the owner against fire for the period of one year commencing August 18, 1900.   According to the testimony presented on behalf of the plaintiff, Weed & Kennedy of New York, the general agents in the United States, on the 14th day of September, 1900, received notices from defendants of the issuance of these policies, but the notices came under separate covers, and the one concerning the policy in question was received last.   The uncontroverted evidence shows that an employee of Weed & Kennedy, who received from the agents daily reports of the policies issued and was authorized to direct their cancellation if he did not deem the risks desirable, wrote the defendants on said 14th day of September, 1900, directing them to cancel policy No. 112,325, and this letter was duly received and the policy revoked and returned to Weed & Kennedy on the twenty-seventh day of the same month.   This employee testified that later in the day he also wrote a letter to the defendants directing the cancellation of policy No. 112,326 and signed the firm name thereto, adding his initial, and placed it in a basket on his desk from which it would be taken in the ordinary course of business by one of the mailing clerks to be copied into the letter book and mailed; that in dictating the letter he dictated the address of defendants as Baltimore, Md., to be incorporated therein; that the firm used stamped envelopes with the usual card printed thereon for the return of the letter if not delivered after five days to the address

of the firm ; that if the letter had been returned it would have come to him in the ordinary course, but that it never was returned to his knowledge; that on the second day of October thereafter he wrote the defendants complaining of their neglect to return two policies, Nos. 112,326, being the one in question, and 112,319, which had been ordered canceled, and on October fourth received a letter from the defendants in reply thereto stating that the policies had been canceled and returned. Weed & Kennedy employed two letter and mailing clerks, each of whom testified that it was their duty to collect, copy into the letter book, inclose in a stamped envelope with the printed request for return thereon, to compare the address in the body of the letter with the address on the envelope, seal and mail all letters found on the desks in the office ; that up to six P. M. the letters were mailed by dropping them in the United States mail chute in the building and that where any remained to be mailed after that hour one or the other of them took them to the general post office ; that one or the other of them mailed all letters found in the baskets on the desks on the 14th and 15th days of September, 1900, " in the regular course ; " that the letter in question was copied in the appropriate letter book and mailed on the fourteenth day of September. They had no distinct recollection of this particular letter and it is evident that their testimony that it was mailed on the fourteenth was based on their custom and an inference drawn from the fact that it was dated on that day and copied in the letter book. The letter was then read from the letter press copy as follows :

. "*Sept.* 14, 1900.

" Messrs. J. RAMSAY BARRY & Co.,

" Baltimore, Md. :

" GENTLEMEN.— Kindly cancel Policy No. 112326 Carroll Mfg. Co. This is a risk that we prefer not to be interested on, and return of the policy will be appreciated.

" Very truly yours,

" WEED & KENNEDY, *Managers.*

" G."

The firm had separate letter books for each insurance company which they represented. The letter was copied into the firm's Netherlands Insurance Company book with letters of the 15*th of*

*September*, and was preceded by twenty-seven and followed by seven letters of that date. The defendant Boyce testified that he had entire charge of the correspondence and received and answered all letters for the defendants; that he never received or saw this letter; that upon receiving the letter directing the cancellation of the other policy he immediately wrote the agents through whom they received the policy that his firm had been directed to cancel the same and requested a return thereof, which was complied with; that when he received the letter of October second concerning the return of the policy in question and another, he turned to his firm's cancellation clerk "and asked him if all those letters and policies had been returned to the company as canceled, and he replied that all of them except one of the Columbia Motor Company had been," or said to the cancellation clerk, "Richard, have all the Netherlands policies been returned that were ordered canceled?" and received the reply that all except the Columbia Motor Company policy had been, and that he thereupon turned to the stenographer and dictated the reply of October third; that policy No. 112,319, mentioned in both letters, was not the Columbia Motor Company policy; that his firm had not received any order and he did not know of any order to cancel the policy in question, and that he had no reason for saying that it had been canceled except the information herein quoted, communicated by the cancellation clerk at that time; that in reply to the letter of October third he received another letter from Weed & Kennedy, dated October fifth, saying that policy No. 112,319 had been received, but the one issued to the Carroll Manufacturing Company had not, and requesting that a further search be made and the policy returned if found, and complaining of the neglect of the defendants to return promptly canceled policies; that on receipt of this letter he again wrote Weed & Kennedy on the sixth of October, stating that in their letter of September fourteenth they had requested the cancellation of policy 112,325, and that if they desired the cancellation of policy 112,326 to notify Messrs. Charles S. Atkinson & Co., insurance brokers in New York, as the defendants' agency for the plaintiff had been discontinued the day before by a special agent of Weed & Kennedy; that when he wrote this letter he had "doubt of the fact that Weed & Kennedy had instructed" his firm to cancel the policy in question, and knew that his firm had

never received such instructions; that the letter of October second informed his firm that Weed & Kennedy desired this policy canceled, but that the reason he wrote the letter of October sixth was that they had not been instructed to cancel the policy. The defendants called their policy and cancellation clerk, who testified that as policy clerk it was his duty to write out the orders and send out policies, and as cancellation clerk to make out all notices of cancellation, deliver them to the brokers and keep the memoranda to see that they were returned, and to communicate with the brokers were the policies not returned within five days; that on October third he informed the defendant Boyce that "all the policies had been sent off by the company with the exception of one, that of the Columbia Motor Manufacturing Co." The witness was then asked, successively, whether or not all of the policies had been sent in that they had received orders to cancel, whether or not all of the policies had been sent in, whether or not he had received at that time directions to get any policy which he did not have in other than the Columbia Motor Manufacturing Company, and whether or not he ever received any instructions or knew of any instructions from Weed & Kennedy to cancel policy 112,326. Each of these questions was objected to by counsel for the plaintiff upon the ground that it was immaterial, irrelevant and incompetent. The objections were sustained and the defendants excepted. It appeared that if the defendants had been directed to cancel the policy the witness had duties to perform concerning the same and the inference is that the letter instructing the cancellation would come to his attention in the ordinary course of business. The competency of the evidence is one thing, its probative force is quite another. Of course, it was possible for the defendant Boyce, who had charge of receiving the mail, to have received directions to cancel a policy and not to have brought the letter to the attention of this witness. The testimony of the witness, if received, would not necessarily tend to show that Boyce did not receive the letter; but it was evidence which the defendants were entitled to present to the jury for the purpose of showing that the letter did not come to the hands of any one of the defendants or their employees authorized to act and having a duty to perform concerning the same. The jurors might think that Boyce might have received this letter and have turned it

over to the witness and have forgotten about it and thus be free from the charge of intentionally giving false testimony. It is readily conceivable that, without a suggestion on the part of counsel for the plaintiff, the defendants might suffer at the hands of the jury for not showing that none of their employees into whose hands the letter would have come in the ordinary course of business and who had a duty to perform concerning it, ever received or saw it. To this extent, we are of opinion that the evidence should have been received.

We are also of opinion that the court erred, to the prejudice of the defendants, in instructing the jury. The court charged that " there is no direct evidence in the case of any negligence on the part of the office of Weed & Kennedy, the plaintiff's managers, in respect to the sending of the letter of instructions to cancel the policy 112,326 in question," and counsel for defendants duly excepted thereto. This instruction was given pointedly and the fair inference from it and from what preceded and followed was that there was direct evidence of negligence on the part of the defendants with respect to the receipt of the letter. The court had informed the jury " that evidence that a letter was deposited where, in due course of business, it should have been mailed or received, with evidence of such a course of business, will sustain a finding of actual receipt; but it does not raise a necessary or legal presumption of it." Immediately following this the jury were instructed that the defendants had produced and relied upon the testimony of Mr. Boyce, " whom you have seen upon the stand and whose credibility you will determine for yourselves." There was no reference in the charge to the appearance or credibility of the witnesses called by the plaintiff. The jury were then instructed that if they believed the testimony adduced by the plaintiff as to the dictation of the letter " and that there was a system under which such a letter would necessarily go to the United States post-office authorities, you will then come to consider as to whether the denial by Mr. Boyce of its having been received countervails the evidence adduced for the plaintiff. There is one rule which it is worth reminding you of, gentlemen of the jury, and that is that neither the gentlemen of the jury nor the court may disregard the testimony given by a witness who has been in nowise impeached or contradicted. If you find that a witness who is interested in the out-

come of an action has testified in any respect falsely, you are at liberty to disregard his testimony altogether." Later on in the charge the court again singled out the defendant Boyce and instructed the jury concerning his evidence, "that if the jury believe from the evidence that the defendant Boyce has not testified truly, with respect to any material fact inquired about, they must consider that in weighing his evidence as to the letter of instructions to cancel the policy in question; that the evidence presented by the plaintiff is sufficient in law to support a verdict as to the sending of the letter to cancel the policy in question, and if the jury do not believe the evidence of the witness Boyce there will remain the persuasive facts and circumstances warranting the jury in finding that the letter was mailed." The defendant Boyce received the further attention of the court in an instruction as follows : "That the jury must take into consideration all the evidence of the witness Boyce and his appearance and demeanor on the stand while under examination, in determining what credibility is to be given to his evidence or any part thereof; that, in determining the weight to be given to the evidence of the witness Boyce, the jury must also take into consideration his self-interest, as a defendant in the case, in escaping liability for damages, and the effect which such interest may have upon his testimony." We have quoted nearly one-half of the entire charge. Its tenor, as a whole, was prejudicial to the defendants. There was no allusion to the fact that the witnesses for the plaintiff had no distinct recollection of mailing this particular letter, or that if negligent in the performance of their duty they might be reluctant to admit it. The testimony of the defendant Boyce was quite as direct that he did not receive the letter as the testimony of the plaintiff's witnesses that it was mailed when they had no distinct recollection on the subject and were merely testifying to a course of business. The jury would naturally infer from the instructions that the testimony given on behalf of the plaintiff was more direct and had greater probative force than that given in behalf of the defendants. A trial judge must be allowed considerable latitude in drawing the attention of the jury to the material evidence in the case and in commenting thereon; but in the case at bar we are of opinion that the learned trial justice conveyed too plainly to the jury his own convictions upon the evidence, and that

the instructions that there was no direct evidence of negligence on the part of Weed & Kennedy was misleading and if inadvertently given should have been corrected when exception was taken thereto.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to the appellants to abide the event.

VAN BRUNT, P. J., PATTERSON, INGRAHAM and McLAUGHLIN, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellants to abide event.